UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

```
KAMERON HARMON and PATRICIA
HASSAN,

          Plaintiffs,

     v.

CITY OF CAMDEN, G. CARLIN,
JEFFREY FRAMPTON, THOMAS
GRIECO, and ANGEL RAMOS,


          Defendants.
```

HONORABLE JOSEPH E. IRENAS

CIVIL ACTION NO. 08-5074
        (JEI/AMD)

**OPINION**
**(Dkt. Nos. 28 and 29)**

**APPEARANCES:**

J. CRAIG CURRIE & ASSOCIATES, P.C.
By: J. Craig Currie, Esq.
    Rachel Wener, Esq.
1600 Market Street, 25th Floor
Philadelphia, PA 19103
     Counsel for Plaintiffs

BLUMBERG & LINDNER, LLC
By: Jean Chetney, Esq.
    Jay J. Blumberg, Esq.
158 Delaware Street
Woodbury, NJ 08096
     Counsel for Defendants Angel Ramos, Jeffrey Frampton, and
     City of Camden

SHIMBERG & FRIEL, P.C.
By: Anne E. Walters, Esq.
20 Brace Road, Suite 350
Cherry Hill, NJ 08034
     Counsel for Defendant Thomas Grieco

RALPH RAYMOND KRAMER
605 White Horse Pike
Haddon Heights, NJ 08035
          Counsel for Defendant G. Carlin

**IRENAS**, Senior District Judge:

This action arises out of an attempted undercover drug buy and subsequent arrest.  Kameron Harmon ("Plaintiff") initiated this action against the City of Camden and the law enforcement officers involved in the undercover drug buy, G. Carlin, Jeffrey Frampton, Thomas Grieco, and Angel Ramos (collectively "Defendants").[1]  Pending before the Court are the Summary Judgment Motions of (1) Defendants Ramos and Frampton and (2) Defendant Grieco.[2]  For the reasons set forth below, the motions will be granted in part and denied in part.

### I.

The High Intensive Drug Trafficking Areas Task Force ("HIDTA") is a federally-funded narcotics program run by the Camden County Prosecutor's Office.  (Ramos and Frampton Br. in Support of Sum. J. ("Ramos") ¶ 2)  Defendants Ramos, Frampton, and Carlin were all employees of the Camden City Police Department assigned to HIDTA.  (Ramos ¶¶ 1, 3, 5)  Defendant Grieco was employed by the Camden County Prosecutor's Office and assigned to HIDTA.  (Grieco Dep. at 6, 11)

On January 18, 2005, Defendants were engaged in an

---

[1]  The Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367.

[2]  All references to "Defendants" in this Opinion are to the moving Defendants only and not Defendant Carlin, unless otherwise indicated.

undercover HIDTA operation in the area of 6th and Berkeley Streets in Camden, New Jersey.  (Ramos ¶¶ 6-7)  Defendants Frampton and Carlin, as supervisors of the operation, waited in a nearby vehicle and maintained radio contact with Defendants Grieco and Ramos, who posed as drug purchasers in a separate vehicle.  (Id.)   Plaintiff, who was 15 years old at the time, was lawfully walking with another minor near the intersection of 6th and Berkeley Streets.  (Grieco Br. in Support of Sum. J. ("Grieco") ¶ 1)  Defendant Ramos pulled the vehicle over when he saw Plaintiff.[3]  (Ramos ¶ 10)  Defendant Grieco exited the vehicle and attempted to buy drugs from Plaintiff and his friend.  (Grieco ¶ 2)

Plaintiff and Defendants' accounts of the attempted drug buy vastly differ.  According to Defendant Grieco, Plaintiff asked him, "What you need, readies?"[4]  To which, he replied, "Yeah." (Grieco Report at 1)  Plaintiff then asked, "Nick or dimes?" and Defendant Grieco answered, "I'll take two dimes if you got 'em." (Id.)  At this point, Plaintiff's friend said, "I don't feel like going to the stash spot right now."  (Id.)  Plaintiff's friend

_____

[3]  According to Defendant Grieco, either Plaintiff or his friend nodded his head in the direction of Defendants' vehicle, which often indicates that an individual has controlled dangerous substances for sale.  (Grieco Report at 1)

[4]  In his response to Plaintiff's statement of facts, Defendant Grieco admits that he initially approached Plaintiff and asked for "rocks."  (Grieco Response to Pl's Stat. of Facts ¶¶ 5-6)

asked Defendant Grieco to step back while Plaintiff and his
friend had a brief conversation.  (Id.)  Plaintiff then told
Defendant Grieco, "I'm goin' to the spot.  Give him the money."
(Id.)  Plaintiff ran around the corner while Defendant Grieco
waited with a twenty dollar bill in his right hand.  (Id.)  When
Plaintiff returned approximately one minute later, he handed
Defendant Grieco two small rocks and snatched the money out of
his hand.[5]  (Id.)  Plaintiff immediately began running, and his
friend, after pushing Defendant Grieco, followed.  (Id.)  Before
Plaintiff and his friend turned the corner, Defendant Grieco
shouted, "Stop.  Police."  (Id.)

    Plaintiff's version differs from Defendants' version in
three important ways.  First, Plaintiff alleges that Defendant
Grieco asked him for drugs and that he handed Defendant Grieco
actual rocks because he did not understand what Defendant Grieco
meant by "rocks."  (Pl's Stat. of Facts ¶¶ 7-8)  Second, Plaintiff
contends that Defendant Grieco did not have a twenty dollar bill
and he therefore did not steal it from Defendant Grieco.  (Pl's
Dep. at 32)  Instead, Plaintiff alleges that Defendant Grieco had
a gun and pointed it at Plaintiff's friend when he received the

---

    [5]  According to Defendant Frampton, while he was later
chasing Plaintiff on foot, he observed Plaintiff discard money.
(Frampton Report at 2) After Plaintiff was secured in a police
vehicle, Defendant Frampton retrieved the discarded twenty dollar
bill.  (Id.)

actual rocks.[6]  (Pl's Stat. of Facts ¶ 8)  Third, according to Plaintiff, Defendant Grieco was not identified as a police officer.  (Id. ¶ 5)

The parties' accounts of Plaintiff's arrest also differs greatly.  According to Defendants, Defendant Ramos radioed to Defendants Frampton and Carlin that Plaintiff had just robbed Defendant Grieco and was fleeing.  (Frampton Report at 1) Defendant Carlin immediately drove in the direction of the fleeing Plaintiff.  (Id. at 2)  When he spotted Plaintiff, Defendant Frampton began chasing him on foot.  (Id.)  Defendant Frampton tackled Plaintiff to the ground.  (Id.)  When Plaintiff tried to get back to his feet, Defendant Frampton wrestled him to the ground.  (Id.)  At this point, Defendant Frampton gained control over Plaintiff, arrested him, and secured him in a vehicle.  (Id.)  Defendant Grieco then arrived on the scene and identified Plaintiff as the person who stole his twenty dollar bill. (Id.)

Plaintiff's account of the arrest is vastly different.  According to Plaintiff, he did not realize he was fleeing from police officers until he ran two blocks and saw a truck with a police badge in the window.  (Pl's Stat. of Facts ¶ 10)  At this

---

[6]  Defendant Grieco admits to having a concealed weapon, but denies that he took it out at this point.  (Grieco Dep. at 36). According to his deposition testimony, Defendant Grieco first drew his weapon during the chase when Plaintiff's friend acted as if he had a concealed weapon.  (Id. at 39)

point, he attempted to comply with an order to get down, but lost consciousness when he was hit in the back of the head. (Id. ¶ 11)  Plaintiff is unable to clearly identify the person who hit him in the back of the head with "something metal and hard that can knock me out."[7]  (Pl's Dep. at 28-29, 62-63)  After blacking out, while on the ground, Plaintiff states that Defendant Frampton then exited his vehicle and began punching Plaintiff repeatedly in his face.  (Id. at 61)  According to Plaintiff, five or six other officers that Plaintiff cannot specifically identify also kicked and punched him in the face and stomach.[8]

---

[7]  In his deposition, Plaintiff creates confusion by speculating as to the identity of the person who hit him in the head.  "When I was getting down on the ground, I don't know, I guess the person that was running after me or chasing me, they hit me with something."  (Pl's Dep. at 29)  Later, Plaintiff "guesses" that the person who hit him was the person wearing fatigues who had attempted to buy drugs from him and who Plaintiff says was chasing him the entire time.  (See Pl's Dep. at 38)  Plaintiff also stated that he "can't remember" whether the "same guy that asked you for rocks" was present when he was being hit.  (Pl's Dep. at 34)  Plaintiff contradicts himself once more by stating that the Defendant who attempted to buy drugs from him "was punching me too" "[i]n my face, and he's the one that hit me in the back of my head."  (Pl's Dep. at 36).

Based on this confused deposition testimony, Defendants draw different conclusions about Plaintiff's identification of the person who hit him in the head.  Defendant Grieco concludes that Plaintiff "could not identify the officer who allegedly hit him in the back of his head or struck him in the face, head and stomach."  (Grieco Reply at 3)  Defendants Ramos and Frampton conclude that Plaintiff "testified that he was hit in the head by the person who apprehended him (Frampton)...."  (Ramos at 19)

[8]  According to Defendant Grieco, he was involved only with the arrest of Plaintiff's friend.  (Grieco Report at 2)  While chasing Plaintiff and his friend, Plaintiff's friend stopped, said "Oh yeah, mother fucker," and reached into his waist as if

(Id. 63)

The events following Plaintiff's arrest are not in dispute. Plaintiff was taken to Virtua hospital where he received three staples in his head, then to the police department, then to the Camden County jail in Lakeland, New Jersey. (Pl's Dep. at 40-41) Plaintiff stayed in the jail for a couple of hours and then was taken to court in the morning and released to his mother. (Id. at 41-42)

Immediately following the January 18, 2005 incident, Plaintiff was charged with robbery, aggravated assault, resisting arrest, and possession and distribution of controlled dangerous substances. (Pl's Stat. of Facts ¶ 16) However, on May 19, 2005, these charges were withdrawn by the Camden County Prosecutor's office and dismissed by the Court. (Id.) Then, according to Plaintiff's confused deposition testimony, he pled guilty to charges of theft by deception and disorderly conduct.[9]

-----

he had a concealed weapon. (Id.) Defendant Grieco drew his weapon at this point and then tackled Plaintiff's friend. (Id.) Unable to control his resistance and unsure whether he had a weapon, Defendant Grieco punched Plaintiff's friend in the face. (Id.) Back-up eventually helped Defendant Grieco restrain Plaintiff's friend and place him under arrest. (Id.) Defendant Grieco then went to the area where Plaintiff was in police custody to identify him as the person who stole the twenty dollars. (Id.)

[9] Although Plaintiff understood that he received a six month probation, he seemed confused about what charges he pled guilty to:
Q:  As a result of that trial, did you either plead guilty to the lesser charges or were you found guilty of

Plaintiff filed his Complaint in the Superior Court of New Jersey, Law Division, Camden County on September 24, 2008.  The case was removed to this Court on October 15, 2008.  As previously noted, Defendants Frampton, Ramos and Grieco filed Motions for Summary Judgment on August 13, 2010.[10]

## II.

"[S]ummary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)).  In deciding a motion for summary judgment, the Court

---

lesser charges?
A: I pleaded guilty to the six-month rule.
Q: Okay.  Now, to get the six-month rule you had to plead guilty to theft by deception and disorderly conduct, correct?
A:  It was disorderly conduct I pleaded guilty to.
Q: Okay. But there were two counts, to my understanding. Do you remember that, that there were two counts?  One was for the disorderly conduct?
A:  Yeah, and the theft charge.
Q:  And the theft.  So you actually pled guilty to both of those charges, correct?
A:  Yes, the six-month rule.
Q:  We'll get to that.  But after pleading guilty, the judge sentenced you to a six-month rule, correct?
A:  Yes.
(Pl's Dep. at 67)

[10]  Defendants Carlin and the City of Camden have not moved for summary judgment.

must construe the facts and inferences in a light most favorable to the non-moving party. *Pollock v. Am. Tel. & Tel. Long Lines*, 794 F.2d 860, 864 (3d Cir. 1986).  "'With respect to an issue on which the non-moving party bears the burden of proof, the burden on the moving party may be discharged by 'showing'– that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case.'" *Conoshenti v. Public Serv. Elec. & Gas*, 364 F.3d 135, 145-46 (3d Cir. 2004) (quoting *Celotex*, 477 U.S. at 323).  The role of the Court is not "to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

### III.

Plaintiff alleges federal and state constitutional violations against all Defendants under 42 U.S.C. § 1983 and the New Jersey Civil Rights Act ("NJCRA").[11]  Specifically, Plaintiff alleges claims for unlawful arrest, excessive force, false imprisonment, and malicious prosecution.[12]  In addition,

---

[11]  42 U.S.C. § 1983 prohibits any person acting under color of state law from depriving a citizen of the United States of rights secured by the Constitution.  The NJCRA is the state law vehicle for recovery for violations of established state and federal constitutional and statutory rights.  *See* N.J.S.A. § 10:6-2(c).

[12]  Plaintiff also claims an "unlawful search and seizure," an "unlawful interrogation," and "deprivation of his right to be secure in person and property."  To the extent that these claims are based on Plaintiff's allegations that Defendants' physical

Plaintiff asserts common law claims of abuse of process, false imprisonment, false arrest, assault and battery, invasion of privacy and conspiracy.

Defendants move for summary judgment on the basis of qualified immunity and the absence of evidence supporting Plaintiff's claims.  The Court will first consider Plaintiff's constitutional claims before turning to the state tort claims.

**A.**

Although Defendants phrase their opposition in terms of qualified immunity, they appear to be arguing that there was no constitutional violation.  The Court will not reach the question of qualified immunity here because it is not clear whether there has been a constitutional violation.  If, on the one hand, there has been no violation, there is no need for qualified immunity.  On the other hand, if the police used excessive force to arrest Plaintiff without probable cause and then maliciously prosecute him, qualified immunity will not protect Defendants as these are clearly established constitutional rights.

For the purposes of the present motion, the Court must

---

contact with him was unreasonable or that his arrest was not based on probable cause, they are subsumed by Plaintiff's excessive force, unlawful arrest, and false imprisonment claims.
    In addition, Plaintiff claims a NJCRA violation based on equal protection.  Summary judgment will be granted to Defendants on that claim because Plaintiff does not articulate any theory under which the facts of record support an equal protection violation.

10

construe the facts and inferences in the light most favorable to Plaintiff in considering whether there has been a constitutional violation.  According to Plaintiff, Defendant Grieco asked him for "rocks" and because he did not understand the reference to drugs, he handed Defendant Grieco actual rocks.  Plaintiff also contends that he did not steal any money from Defendant Grieco and only began running when Defendant Grieco pointed a gun at Plaintiff's friend.  Then, when Plaintiff realized he was fleeing from police, he attempted to comply with an order to get down, but was knocked unconscious by one of the Defendants and punched and kicked by several others.  Following the arrest, Plaintiff was taken to Virtua hospital where he received three staples in his head and then to the police station and jail.

These facts alleged by Plaintiff, if proven at trial, show that he was arrested without probable cause, subjected to excessive force, and falsely imprisoned, in violation of his Fourth and Fourteenth Amendment rights.  *Kopec v. Tate*, 361 F.3d 772, 777 (3d Cir. 2004)(holding that first step of qualified immunity analysis is satisfied by plaintiff asserting facts that if proven would establish an excessive force violation).

The Court finds that Plaintiff's version of events also supports a violation of his constitutional rights based on a malicious prosecution claim.  To prevail on a malicious prosecution claim under § 1983, a plaintiff must establish that:

11

(1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in the plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding. *McKenna v. City of Philadelphia*, 582 F.3d 447, 461 (3d Cir. 2009).

Two sets of charges were brought against Plaintiff.  The first more serious charges were dismissed on May 19, 2005.  Subsequently, Plaintiff pled guilty to lesser charges.  The lesser charges cannot be the basis of a malicious prosecution claim because Plaintiff's guilty plea means that the proceedings were not terminated in his favor.  Therefore, the Court will analyze Plaintiff's malicious prosecution claim based on the first set of charges that were ultimately dismissed.

Plaintiff's account of the drug buy and arrest supports a reasonable inference that the charges were brought without probable cause, and he suffered a deprivation of liberty when he was incarcerated following the arrest.  The initial charges were ultimately dismissed, which is a resolution favorable to Plaintiff.  Defendants also can be said to have initiated the criminal proceeding by supporting the charges with their allegedly false police reports.  *See Gallo v. Philadelphia*, 161

12

F.3d 217, 224 (3d Cir. 1998)("section 1983 malicious prosecution claim might be maintained against one who furnished false information to...prosecuting authorities").  In addition, Plaintiff's account of events taken as a whole supports an inference that Defendants acted maliciously, based on the absence of probable cause for the arrest and the seriousness of his physical injuries.

The Court concludes that the moving Defendants are not entitled to summary judgment because Plaintiff has presented evidence that, if established at trial, support violations of his constitutional rights.[13]

**B.**

For the reasons articulated in subsection A immediately *supra*, the Court must deny summary judgment on Plaintiff's corresponding state law claims of assault and battery, false imprisonment, false arrest, and abuse of process.  As to the remaining state law tort claims, the Court will fist address invasion of privacy and then civil conspiracy.

Plaintiff alleges a false light claim based on the alleged

---

[13]   Defendant Ramos moves for summary judgment on the basis that there is no evidence that he participated "in the foot pursuit of Plaintiff or was present for the arrest of the Plaintiff." (Ramos at 18)  However, Plaintiff's deposition does not clearly establish how each Defendant is alleged to have participated in the arrest. (*See* Pl's Dep. at 36-39)  Because of the unclear record, the Court will deny summary judgment to Defendant Ramos on this basis.

defamatory publication of information concerning Plaintiff's arrest.[14]   The elements of false light are: (1) a reasonable person would find the false light in which plaintiff was placed would be highly offensive; and (2) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed. *Leang v. Jersey City Bd. of Educ.*, 198 N.J. 557, 589 (2009).

In support of his false light claim, Plaintiff cites to a Courier Post Online article in which Plaintiff's name and photograph were allegedly published along with a statement that he was arrested on drug charges.   Although cited as "Plaintiff's exhibit 'C' attached hereto," the record does not include a copy of the article.   (Pl's Opp. at 12)

---

[14]   In attempting to define "the tort of invasion of privacy and false light," Plaintiff cites to a general definition of the four distinct torts comprising invasion of privacy. (Pl's Opp. 11)   To the extent that Plaintiff is claiming violations of privacy torts other than false light, the Court grants summary judgment to the moving Defendants on any such claims.   Plaintiff has alleged no facts that (1) Defendants have used Plaintiff's name or likeness for commercial purposes, *Faber v. Condecor, Inc.*, 195 N.J. Super. 81, 86-90 (App. Div. 1984)(privacy tort of appropriation requires the use of a name of likeness for trade purposes); or (2) that the matters revealed were private facts the dissemination of which would offend a reasonable person, *Romaine v. Kallinger*, 109 N.J. 282, 297 (1988)(privacy tort of public disclosure of private facts requires that private matters were revealed and a reasonable person would be offended by the dissemination); or (3) that Defendants have intruded into Plaintiff's private affairs, *Rumbauskas v. Cantor*, 138 N.J. 173, 179-82 (privacy tort of intrusion upon seclusion requires intentional intrusion upon solitude or seclusion of another or his private affairs or concerns).

The Court will grant summary judgment to moving Defendants on this claim because nothing in the record supports an inference that any of the Defendants had knowledge of or caused the publication of the alleged article and no reasonable factfinder could so find.

A civil conspiracy under New Jersey law is the "combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or an injury upon another, and an overt act that results in damage." *LoBiondo v. Schwartz*, 199 N.J. 62, 102 (2009) (internal quotations omitted).

The Court will grant summary judgment to the moving Defendants on Plaintiff's conspiracy claim because Plaintiff has failed to allege facts sufficient to withstand summary judgment. In support of his conspiracy claim, Plaintiff contends that "[a] jury could easily infer that, given the synchronized activity of the officers, when matched against the absence of a crime, the officers had arrived at an agreement of the minds to proceed with the false charging of a crime and all of the necessary falsehoods that would follow." (Pl's Opp. at 13)  Plaintiff's conclusory allegation of "synchronized activity" is insufficient to support a conspiracy claim.  It is undisputed that Plaintiff had no previous interaction with Defendants, and that Defendants had no

reason to know that they would encounter Plaintiff when and where they did.  Absent allegations that would permit a reasonable inference that Defendants acted pursuant to an agreement to inflict a wrong against Plaintiff, the civil conspiracy claim fails.  Accordingly, summary judgment will be granted for the moving Defendants on Plaintiff's civil conspiracy claim.

**IV.**

For the reasons stated above, Defendants' Motions for Summary Judgment will be granted with respect to Plaintiff's state law claims for invasion of privacy and civil conspiracy. Defendants' Motions will be denied with respect to Plaintiff's federal and state constitutional claims and state law claims for assault and battery, false arrest, false imprisonment and abuse of process.[15]  An appropriate Order accompanies this Opinion.

Dated: November 4, 2010

s/Joseph E. Irenas
**JOSEPH E. IRENAS, S.U.S.D.J.**

---

[15]  Although not raised in their Motions by the moving Defendants, Plaintiff's claims appear to be time-barred.  The events giving rise to Plaintiff's claims occurred between January 18-19, 2005, but Plaintiff did not file a complaint until September 24, 2008.  The limitations period for Plaintiff's § 1983 claims is governed by New Jersey's statute of limitations for personal injury actions.  *Wallace v. Kato*, 549 U.S. 384, 387-88 (2007).  According to N.J.S.A. § 2A:14-2, an action for an injury to the person caused by a wrongful act must be commenced within two years of accrual of the cause of action.

16